IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| WILLIAM LEONARD AND KAREN LEONARD, husband and wife<br>1035 Rosa Parks Lane<br>Wilmington, North Carolina 28409<br><br>Plaintiffs,<br><br>v.<br><br>BED, BATH & BEYOND, INC.<br>650 Liberty Avenue, #2<br>Union, New Jersey 07083<br><br>Defendant. | : : : : : : : : : : : : : : : | CIVIL ACTION<br>NO.<br><br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |
|---|---|---|

## COMPLAINT

1. Plaintiffs, William and Karen Leonard, are adult residents of North Carolina, currently residing at 1035 Rosa Parks Lane in Wilmington, North Carolina, 28409.

2. Defendant, Bed Bath & Beyond, Inc. ("BB&B") is a corporation or other jural entity organized and/or existing by virtue of the laws of the State of New Jersey with its principal place of business located at 650 Liberty Avenue, #2, Union, New Jersey, 07083, and, at all times relevant hereto, regularly conducted business at 650 Liberty Avenue, #2, Union, New Jersey, 07083.

3. Venue is proper in the District of New Jersey pursuant to 28 U.S.C. §1391(b) because the defendant is a resident of this judicial district and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

4. Federal jurisdiction in this action is predicated upon diversity of citizenship under statutory authority of 28 U.S.C. § 1332. The amount in controversy exceeds $75,000.00.

## OPERATIVE FACTS

5. Plaintiffs hereby incorporate paragraphs 1 through 4 as though fully set forth herein at length.

6. This cause of action arises from events that occurred on May 12, 2012 when Plaintiff William Leonard suffered severe burns to his leg and hand while using defendant BB&B's product known as FireGel Citronella Eco-Gel Fuel ("FireGel").

7. At all material times, defendant BB&B acted through its officers, employees, agents, and representatives, who in turn were acting within the scope of their authority and employment in the furtherance of the business of defendant BB&B.

8. At all material times, defendant BB&B and/or its agents, servants and/or employees created, designed, developed, engineered, fabricated, manufactured, produced, procured, packaged, marketed, labeled, promoted, warranted, distributed, sold, placed into the stream of commerce, derived revenue from, and/or profited from the FireGel product.

9. At all material times, FireGel was a liquid fuel gel that was designed to be poured into and ignited in a "fire pot," a ceramic pot with a stainless steel cup in the center that acted as a fuel reservoir.

10. At all material times, FireGel contained more than 80% ethanol and was highly flammable, unstable, combustible, explosive, and incendiary.

11. At all material times, FireGel was highly adhesive to material with which it came into contact, including human skin, flesh, and clothing.

12. At all material times, defendant BB&B and/or its agents, servants and/or employees, manufactured, produced, arranged for, procured, packaged, labeled, advertised, marketed, retailed, merchandised, distributed, warranted, sold, placed into the stream of commerce, derived revenue from, and/or profited from various domestic merchandise and housewares for retail sale to the general public, including, but not limited to, FireGel.

13. At all material times, FireGel was created, manufactured, produced, packaged, and labeled by and/or on behalf of defendant BB&B.

14. On or about June 2011, plaintiff Karen Leonard purchased a bottle of FireGel from defendant BB&B at the BB&B retail store located at 352 South College Road, Wilmington, North Carolina, 28403.

15. On or about May 12, 2012, plaintiffs William and Karen Leonard were using the FireGel in a fire pot in a manner intended and foreseeable by defendant BB&B

3

at their home at 1035 Rosa Parks Lane in Wilmington, North Carolina.

16. During this intended and foreseeable use, plaintiff William Leonard attempted to light the FireGel in the decorative pot, at which time the FireGel combusted and exploded, sending flaming FireGel onto plaintiff William Leonard.

17. During this intended and foreseeable use, the FireGel engulfed plaintiff William Leonard's leg in flames and adhered to his skin, flesh, and clothing and was unable to be extinguished.

18. As set forth herein, the conduct of defendant BB&B caused plaintiff to suffer:

    a. second and third degree burns to the leg and thigh;

    b. burns to the hand;

    c. skin graft procedure;

    d. scarring;

    e. disfigurement;

    f. loss of sensation;

    g. shock;

    h. physical pain;

    i. mental anguish;

    j. humiliation;

    k. embarrassment;

l.  loss of past and future earnings and earnings potential; and

m.  the full measure of damages allowed under the law and under the categories of pain and suffering, expenses, support and services as defined under the laws of the State of New Jersey.

19. During this intended and foreseeable use, plaintiff Karen Leonard witnessed her husband, William Leonard, sustain second and third degree burns, scarring, disfigurement, shock, severe pain and suffering, and numerous other physical injuries.

20. At all times prior to and on May 12, 2012, defendant BB&B knew and/or should have known of the conditions, circumstances, and properties of FireGel that led to the injuries sustained by William Leonard

21. The injuries sustained by plaintiffs William and Karen Leonard were caused solely and wholly by reason of defendant's conduct, as set forth more fully below, and were not caused or contributed thereto by any negligence on the part of plaintiffs.

**COUNT I - NEGLIGENCE**
**Plaintiff William Leonard**
v.
**Defendant Bed Bath & Beyond, Inc.**

22. Plaintiffs hereby incorporate paragraphs 1 through 21 as though fully set forth herein at length.

23. At all material times, defendant BB&B knew or should have known and had actual and constructive notice that FireGel was extremely and unreasonably dangerous, hazardous, and not reasonably safe for its intended purposes and foreseeable uses.

24. At all material times, defendant BB&B and/or its agents, servants, and/or employees owed a duty of reasonable care to plaintiff William Leonard.

25. At all material times, defendant BB&B and/or its agents, servants, and/or employees breached the duty of reasonable care that they owed to plaintiff William Leonard.

26. At all material times, defendant BB&B and/or its agents, servants, and/or employees failed to exercise reasonable care to avoid an unreasonable risk of harm to persons likely to be exposed to danger when FireGel is used in an intended and foreseeable manner.

27. At all material times, defendant BB&B and/or its agents, servants, and/or employees were careless, negligent, grossly negligent, reckless, knowing, intentional, willful, wanton, and acted with gross indifference and conscious disregard for the safety and well-being of the consumers and the general public, including plaintiff William Leonard by:

    a. Failing to take reasonable steps to ensure that FireGel was safe for its intended use;

b.  Failing to take reasonable precautions to prevent users and persons in the vicinity of FireGel while it is in use from being burned, injured, and maimed;

c.  Failing to exercise reasonable care in the design of FireGel;

d.  Failing to exercise reasonable care in the manufacture of FireGel;

e.  Failing to exercise reasonable care to appropriately test FireGel;

f.  Failing to exercise reasonable care to appropriately inspect FireGel;

g.  Failing to exercise reasonable care to appropriately package FireGel;

h.  Failing to exercise reasonable care to appropriately label FireGel;

i.  Failing to exercise reasonable care to provide proper instructions for FireGel;

j.  Failing to exercise reasonable care to provide appropriate, adequate, necessary, and sufficient warnings for FireGel;

k.  Knowingly, consciously, and willfully providing warnings regarding the dangers and use of FireGel that were grossly inadequate and/or insufficient;

l.  Failing to employ reasonable and appropriate quality assurance procedures relevant to FireGel;

m. Knowingly failing to provide substances and materials necessary to extinguish flaming FireGel;

n. Continuing to create, design, devise, develop, engineer, fabricate, manufacture, produce, procure, package, market, promote, warrant, distribute, sell, place into the stream of commerce, and profit from FireGel despite their knowledge of the extreme dangers it poses including severe injuries.

28. By reasons of the foregoing, plaintiff William Leonard sustained severe and permanent personal injuries, including but not limited to, second and third degree burns, skin graft procedure, scarring, disfigurement, loss of sensation, shock, severe pain and suffering, and numerous other bodily injuries.

29. The conduct, acts and/or omissions of defendant BB&B and/or its agents, servants and/or employees as described herein, was the direct and proximate cause of the injuries sustained by plaintiff William Leonard.

**WHEREFORE**, plaintiffs demand damages against defendant in an amount in excess of $75,000.00, and in excess of the prevailing arbitration limits exclusive of pre-judgment interest, post-judgment interest and costs.

8
Case 5:15-cv-00284-F   Document 1   Filed 04/11/14   Page 8 of 17

## COUNT II - STRICT PRODUCTS LIABILITY

### Plaintiff William Leonard

### v.

### Defendant Bed Bath & Beyond, Inc.

30.     Plaintiffs hereby incorporate paragraphs 1 through 29 as though fully set forth herein at length.

31.     Defendant BB&B and/or its agents, servants and/or employees, are strictly liable in tort for its defective design, development, engineering, fabrication, manufacture, production, warning, labeling, inspection, testing, marketing, promotion, distribution, and sale of FireGel, which defects caused the aforementioned occurrence and serious injuries sustained by plaintiff William Leonard on or about May 12, 2012.

32.     At the time of the design, development, engineering, fabrication, manufacture, production, procurement, packaging, warning, labeling, inspection, testing, marketing, promotion, distribution, sale and placement into the stream of commerce of FireGel, the product was defective, hazardous, unreasonably dangerous, and not reasonably safe for its intended use.

33.     At the time of the design, development, engineering, fabrication, manufacture, production, procurement, packaging, warning, labeling, inspection, testing, marketing, promotion, distribution, sale and placement into the stream of commerce of FireGel, there were safer, feasible alternative designs for the FireGel.

34.     The FireGel contained manufacturing defects.

35. At the time of the design, development, engineering, fabrication, manufacture, production, procurement, packaging, warning, labeling, inspection testing, marketing, promotion, distribution, sale and placement into the stream of commerce of FireGel, defendant BB&B and/or its agents, servants, and/or employees, provided defective warnings and instructions regarding the dangers and use of the FireGel.

36. The FireGel was defectively designed, developed, manufactured, produced, procured, packaged, marketed, promoted, distributed, sold and placed into the stream of commerce without component substances and materials to extinguish the flaming FireGel.

37. The dangers from FireGel vastly outweighed its utility.

38. FireGel was so inherently dangerous that it should never have been placed into the stream of commerce and should never have been manufactured, produced, packaged, labeled, marketed, distributed, or sold.

39. The conduct of defendant BB&B and/or its agents, servants and/or employees, in designing, developing, engineering, fabricating, manufacturing, producing, procuring, packaging, warning, labeling, inspecting, testing, marketing, promoting, distributing, selling and placing into the stream of commerce FireGel in defective and not reasonably safe conditions and with defective warnings and

instructions regarding the dangers and use of the FireGel was in violation of the Products Liability Act, N.J.S.A. 2A:58C-1, et seq.

40. The conduct of defendant BB&B and/or its agents, servants and/or employees, in designing, developing, engineering, fabricating, manufacturing, producing, procuring, packaging, warning, labeling, inspecting, testing, marketing, promoting, distributing, selling and placing into the stream of commerce FireGel in defective and not reasonably safe conditions was knowingly, intentional, willful, wanton, and with gross indifference and conscious disregard for the safety and well-being of the consumers and the general public, including plaintiff William Leonard.

41. By reason of the foregoing, plaintiff William Leonard sustained severe and permanent personal injuries, including but not limited to, second and third degree burns, skin graft procedure, scarring, disfigurement, loss of sensation, shock, severe pain and suffering, and numerous other bodily injuries.

42. The defective and not reasonably safe condition of FireGel was the direct and proximate cause of the injuries sustained by plaintiff William Leonard.

**WHEREFORE**, plaintiffs demand damages against defendant in an amount in excess of $75,000.00, and in excess of the prevailing arbitration limits exclusive of pre-judgment interest, post-judgment interest and costs.

## COUNT III - BREACH OF EXPRESS WARRANTIES

### Plaintiff William Leonard

### v.

### Defendant Bed Bath & Beyond, Inc.

43. Plaintiffs hereby incorporate paragraphs 1 through 42 as though fully set forth herein at length.

44. At all material times, defendant BB&B and/or its agents, servants and employees, warranted and represented by its advertisements, marketing, promotions, labeling, and/or oral and written communications to the purchaser and others that the aforementioned FireGel was safe, proper, merchantable, and fit for its reasonable and intended uses.

45. At all material times, defendant BB&B and/or its agents, servants and employees knew or should have known and had actual and/or constructive knowledge that FireGel would be ignited for indoor and/or outdoor use, that purchasers and/or consumers, including plaintiff William Leonard, would rely upon the warranties and representations that the product was safe, proper, merchantable, and fit for its foreseeable and intended uses.

46. At all material times prior to and on May 12, 2012, plaintiff William Leonard relied on the aforementioned warranties that FireGel was safe, proper, merchantable, and fit for its foreseeable and intended uses.

47. At all material times, FireGel was unsafe, unmerchantable, and unfit for its foreseeable and intended uses.

48. By reason of the foregoing, defendant BB&B and/or its agents, servants and employees violated and breached the aforementioned warranties.

49. By reason of the foregoing, plaintiff William Leonard sustained severe and permanent personal injuries, including but not limited to, second and third degree burns, skin graft procedure, scarring, disfigurement, loss of sensation, shock, severe pain and suffering, and numerous other bodily injuries.

**WHEREFORE**, plaintiffs demand damages against defendant in an amount in excess of $75,000.00, and in excess of the prevailing arbitration limits exclusive of pre-judgment interest, post-judgment interest and costs.

## COUNT IV - BREACH OF IMPLIED WARRANTIES OF MERCHANTABILITY
### Plaintiff William Leonard
### v.
### Defendant Bed Bath & Beyond, Inc.

50. Plaintiffs hereby incorporate paragraphs 1 through 49 as though fully set forth herein at length.

51. At all material times, defendant BB&B and/or its agents, servants and employees, warranted and represented to the purchaser and others that FireGel was safe, proper, merchantable, and fit for its foreseeable, customary, usual, and intended uses.

52. At all material times, defendant BB&B and/or its agents, servants and employees, knew or should have known and had actual and/or constructive knowledge that FireGel would be ignited for indoor and/or outdoor use, that purchasers and/or consumers, including plaintiff William Leonard, would rely upon the warranties and representations that FireGel was safe, proper, merchantable, and fit for its foreseeable and intended uses.

53. At all material times, prior to and on May 12, 2012, plaintiff William Leonard relied on the aforementioned warranties that FireGel was safe, proper, merchantable, and fit for its foreseeable, customary, usual, and intended uses.

54. At all material times, FireGel was unsafe, unmerchantable, and unfit for its foreseeable, customary, usual, and intended uses.

55. By reason of the foregoing, defendant BB&B and/or its agents, servants and employees violated and breached the aforementioned warranties.

56. By reason of the foregoing, plaintiff William Leonard sustained severe and permanent personal injuries, including but not limited to, second and third degree burns, skin graft procedure, scarring, disfigurement, loss of sensation, shock, severe pain and suffering, and numerous other bodily injuries.

**WHEREFORE**, plaintiffs demand damages against defendant in an amount in excess of $75,000.00, and in excess of the prevailing arbitration limits exclusive of pre-judgment interest, post-judgment interest and costs.

## COUNT V - NEGLIEGNT INFLICTION OF EMOTIONAL DISTRESS

### Plaintiff Karen Leonard

v.

### Defendant Bed Bath & Beyond, Inc.

57. Plaintiffs hereby incorporate paragraphs 1 through 56 as though fully set forth herein at length.

58. As a result of the negligence, carelessness, and recklessness of defendant BB&B, plaintiff William Leonard sustained severe and permanent personal injuries, including but not limited to, second and third degree burns, skin graft procedure, scarring, disfigurement, loss of sensation, shock, severe pain and suffering, and numerous other bodily injuries.

59. At all material times, plaintiff Karen Leonard was the wife of plaintiff William Leonard and witnessed plaintiff William Leonard sustain severe and permanent personal injuries, including but not limited to, second and third degree burns, scarring, disfigurement, loss of sensation, shock, severe pain and suffering, and numerous other bodily injuries.

60. As a result of observing plaintiff William Leonard sustain the above mentioned severe and permanent injuries, plaintiff Karen Leonard has suffered and continues to suffer from severe and continuing emotional distress, which includes, but is not limited to, anxiety, stress, depression, sleeplessness, and nightmares.

**WHEREFORE**, plaintiffs demand damages against defendant in an amount in excess of $75,000.00, and in excess of the prevailing arbitration limits exclusive of pre-judgment interest, post-judgment interest and costs.

## COUNT VI - LOSS OF CONSORTIUM

### Plaintiff Karen Leonard

v.

### Defendant Bed Bath & Beyond, Inc.

61. Plaintiffs hereby incorporate paragraphs 1 through 60 as though fully set forth herein at length.

62. As a result of the negligence, carelessness, and recklessness of defendant BB&B, plaintiff Karen Leonard has suffered the loss of service, comfort, and society of her husband, plaintiff William Leonard, in the past and will continue to do so in the future.

63. As a result of the negligence, carelessness, and recklessness of defendant BB&B, plaintiff Karen Leonard claims the full measure of damages allowable under New Jersey law for the loss of the consortium of her husband, William Leonard.

**WHEREFORE**, plaintiffs demand damages against defendant in an amount in excess of $75,000.00, and in excess of the prevailing arbitration limits exclusive of pre-judgment interest, post-judgment interest and costs.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury as to all counts and all issues raised by this Complaint.

                              Respectfully submitted,

                              **KLINE & SPECTER**

BY:   s/Michael Trunk, Esquire
        MICHAEL A. TRUNK, ESQUIRE
        ID. No. 83870
        Liberty View
        457 Haddonfield Road, Suite 540
        Cherry Hill, New Jersey 08002
        856-662-1180
        michael.trunk@klinespecter.com
        Attorney for Plaintiffs

Dated: April 11, 2014