IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:15-CV-00284-F

| | | |
|---|---|---|
| WILLIAM LEONARD and KAREN LEONARD, | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | **ORDER** |
| BED, BATH & BEYOND, INC., | ) | |
| Defendant/Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| NAPA HOME & GARDEN, INC., et al. | ) | |
| Third-Party Defendants | ) | |

This matter is before the court on Third-Party Defendant Losorea Packaging, Inc.'s ("Losorea") Motion to Dismiss [DE-78]. For the reasons stated below, the motion is DENIED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs William and Karen Leonard ("the Leonards") filed a complaint in the underlying personal injury action against Bed, Bath & Beyond, Inc. ("BBB") on April 11, 2014, in the United States District Court for the District of New Jersey.[1] Compl. [DE-1]. The Leonards' Complaint asserts claims of Negligence, Strict Products Liability, Breach of Express Warranties, Breach of Implied Warranties of Merchantability, Negligent Infliction of Emotional Distress, and Loss of Consortium. Each of the Leonards' causes of action arise out of injuries sustained by Mr. Leonard on May 12, 2012, when he was burned while attempting to use FireGel Citronella Eco-Gel Fuel ("FireGel") purchased from BBB. *See id.*

---

[1] The action was later transferred to this district. *See* Order of May 22, 2015 [DE-47].

On January 12, 2015, BBB filed its Third-Party Complaint [DE-24] against Napa Home & Garden, Inc., Fuel Barons, Inc., Ashland, Inc., CyCan Industries, Inc., Losorea Packaging, Inc., and Essential Ingredients, Inc. In the event it is held liable to the Leonards, BBB seeks compensation from Losorea for claims sounding in Negligence, Breach of Implied Warranty, Product Liability, Indemnification, and Contribution. Losorea's Motion to Dismiss [DE-78] has been fully briefed and is now ripe for disposition.

As BBB's claims against Losorea arise from Losorea's alleged role in the manufacturing and distribution of the FireGel that injured Mr. Leonard, a brief discussion of the supply chain is warranted. Although the specific details regarding the manufacture and distribution of the product are disputed, the court will attempt to roughly describe each company's role in the process. It appears uncontested that Bed, Bath & Beyond was a retail seller of FireGel, which it purchased from a distributor, Napa Home & Garden, Inc. *See* Third-Party Compl. [DE-24] ¶ 87; Losorea Mot. Dismiss Mem. [DE-79] at 3–4. Napa appears to have distributed FireGel on behalf of Fuel Barons, Inc. *See* Losorea Mot. Dismiss Mem. [DE-79] at 3–4. Losorea reports that it provided bottling and packaging services, pursuant to a contract with Fuel Barons. *See id.* Under this contract, Fuel Barons supplied all the necessary components for the FireGel as well as the packaging materials and labels; Losorea mixed the chemicals together according to Fuel Barons' formula and packaged it according to Fuel Barons' specifications. *See id.* In March of 2013, CyCan Industries, Inc., purchased all or substantially all of Losorea's assets and business. *See id.* at 6–7.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(2), the party asserting personal jurisdiction has the burden to prove the existence of a ground for jurisdiction by a preponderance of the evidence. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005). "Where a

2

challenge to personal jurisdiction is addressed only on the basis of motion papers, supporting legal memoranda, and the relevant allegations of a complaint, 'the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Pan-Am. Prods. & Holdings, LLC v. R.T.G. Furniture Corp.*, 825 F. Supp. 2d 664, 676 (M.D.N.C. 2011) (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). In that instance, the court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676. "[W]here the defendant provides evidence that denies the facts essential for jurisdiction, the plaintiff must present sufficient evidence to create a factual dispute on each jurisdictional element which has been denied by the defendant on which the defendant presented evidence." *Pan-Am.*, 825 F. Supp. 2d at 676 (citing *Pinpoint IT Servs., L.L.C. v. Atlas IT Export Corp.*, 812 F. Supp. 2d 710, 716–17 (E.D. Va. 2011); *Indus. Carbon Corp. v. Equity Auto & Equip. Leasing Corp.*, 737 F. Supp. 925, 926 (W.D. Va. 1990)). At this stage, if the court determines that a plaintiff has established a prima facie showing of personal jurisdiction, the court "will proceed as if it has personal jurisdiction over [the] matter, although factual determinations to the contrary may be made at trial." *Pinpoint*, 812 F. Supp. 2d at 717 (citing 2 James W. Moore et al., Moore's Federal Practice ¶ 12.31 (3d ed. 2011)).

### III. DISCUSSION

Analysis of personal jurisdiction consists of a two-part inquiry. First, the court must determine whether North Carolina's long-arm statute authorizes the exercise of personal jurisdiction over the defendants. *See Christian Science Bd. of Directors of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). Second, if the long-arm statute does authorize jurisdiction, then the court must examine whether the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *See id.* North Carolina's long-arm statute, N.C. Gen. Stat. § 1-

3

75.4 (2015), was enacted "to make available to the North Carolina courts the full jurisdictional powers permissible under federal due process." *Dillon v. Numismatic Funding Corp.*, 231 S.E.2d 629, 630 (N.C. 1977). Because North Carolina long-arm jurisdiction has been interpreted to be coextensive with the limits of due process, the normal two-step personal jurisdiction test has been collapsed into a single inquiry of whether the exercise of jurisdiction comports with due process. *See Nolan*, 259 F.3d at 215. That is, the court in this case need only inquire into whether "the defendant has such 'minimal contacts' with the forum state that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Nolan*, 259 F.3d at 215 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In other words, a defendant must have purposefully established minimum contacts with the forum state such that he "should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

"The requisite contacts may be established by way of general or specific jurisdiction." *Hardee's Food Sys., Inc. v. Beardmore*, 169 F.R.D. 311, 314 (E.D.N.C. 1996). General jurisdiction enables a foreign forum to exercise jurisdiction over a defendant due to the defendant's "continuous and systematic" contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984). Specific jurisdiction exists when a plaintiff's cause of action arises out of the defendant's conduct with the forum state. *See Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). As the Fourth Circuit has noted, the "threshold level of minimum contacts to confer general jurisdiction is significantly higher than for specific jurisdiction." *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997).

Here, BBB asserts only the existence of personal jurisdiction. The court will limit its analysis accordingly. "With respect to specific jurisdiction, '[t]he touchstone . . . remains that an out-of-state person have engaged in some activity purposefully directed toward the forum state.'" *Id.* at 625

4

(alteration in original) (quoting *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 946 (4th Cir. 1994)). In the Fourth Circuit, courts typically engage in a three-part inquiry to determine if specific jurisdiction exists, examining "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs*, 561 F.3d at 278 (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)). Each prong of this test must be satisfied for a court to exercise personal jurisdiction over a party. *Id.*

Under the first prong of the specific jurisdiction test, the court determines whether the defendant has "established 'minimum contacts' with the forum state by 'purposefully avail[ing itself] of the privilege of conducting business under the [state's] laws.'" *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 392 (4th Cir. 2012) (quoting *Consulting Eng'rs*, 561 F.3d at 278). While actions that are directed at the forum state "in only 'a random, fortuitous, or attenuated way' are insufficient to support jurisdiction," sufficient contacts exist "where a defendant has 'targeted the forum.'" *Id.*

Here, Losorea denies the existence of minimum contacts sufficient to subject it to personal jurisdiction in North Carolina. Losorea asserts, among other things: (1) that it merely packaged the FireGel product on behalf of Fuel Barons; (2) that, as a mere packager, it did not introduce FireGel into the stream of commerce; (3) that it did not ship FireGel to or sell FireGel in North Carolina; (4) that it did not establish the distribution chain that eventually brought FireGel into North Carolina; and (5) that it did not know that FireGel would be sold in North Carolina. *See* Losorea Mot. Dismiss Mem. [DE-79] at 24–29. Because Losorea has "provide[d] evidence that denies the facts essential for jurisdiction," BBB must "present sufficient evidence to create a factual dispute" regarding Losorea's contacts with the state. *See Pan-Am.*, 825 F. Supp. 2d at 676. To that end, BBB alleges the following:

5

(1) Losorea was the only company to bottle FireGel; (2) Losorea affixed a Bed, Bath & Beyond Label to each bottle of FireGel; (3) BBB is a well-known national retailer; and (4) BBB sold 3,571 bottles of FireGel in North Carolina. *See* BBB Resp. [DE-93] at 7. These facts, BBB argues, show that Losorea intended that the FireGel it bottled would reach consumers in North Carolina, thus demonstrating Losorea's purposeful availment of the privilege of conducting business in the state. *See id.* at 9.

Construing the allegations in the light most favorable to BBB, assuming BBB's credibility, and drawing the most favorable inferences for the existence of jurisdiction, *see Combs*, 886 F.2d at 676, the court finds that BBB has presented evidence sufficient at least to create the requisite factual dispute, *see Pan-Am.*, 825 F. Supp. 2d at 676. Accordingly, the court finds that BBB has established a prima facie showing of purposeful availment.

The second prong of the specific jurisdiction analysis asks whether the plaintiff's injuries arise out of the defendant's contacts with the state. Here, BBB seeks recovery from Losorea in the event BBB is found liable to the Leonards. The Leonards allegedly purchased FireGel from BBB in North Carolina, used the product at their home in the state, and suffered their injuries there. Losorea does not appear to dispute that, to the extent it directed its activities toward North Carolina, BBB's alleged injuries arose out of those activities. *See* Losorea Mot. Dismiss Mem. [DE-79] at 24–25 (addressing only the first and third prongs of the specific jurisdiction analysis).

The court therefore turns to the third prong of the specific jurisdiction test: whether the exercise of personal jurisdiction over Losorea would be constitutionally reasonable. In assessing this, the court considers factors such as "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." *Consulting*

*Eng'rs*, 561 F.3d at 279. Here, North Carolina has a substantial interest in adjudicating disputes related to injuries suffered by its citizens within the state. Because the underlying personal injury suit will proceed in North Carolina, resolution of BBB's third-party claims in the state will promote both judicial efficiency and convenient and effective relief for BBB. Although litigation in its home state of Georgia would certainly be more convenient for Losorea, the burden of appearing in North Carolina does not appear to be so substantial that it would outweigh the benefits of resolving the dispute in this state. Having weighed all factors, the court concludes that its exercise of personal jurisdiction would not be constitutionally unreasonable in this case.

Because BBB has made the requisite prima facie showing, the court "will proceed as if it has personal jurisdiction over the matter, although factual determinations to the contrary may be made at trial." *See Pinpoint*, 812 F. Supp. 2d at 717.

## IV. CONCLUSION

For the foregoing reasons, Losorea's Motion to Dismiss [DE-78] on the basis of lack personal jurisdiction is DENIED.

SO ORDERED.

This the 7 day of January, 2016.

*James C Fox*

JAMES C. FOX
Senior United States District Judge